UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DIANE THOMSEN,<br><br>Defendant. | 4:17-CR-40085-02-KES<br><br><br>ORDER DENYING<br>MOTION FOR RELIEF UNDER THE<br>FIRST STEP ACT |

Defendant, Diane Thomsen, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 113. Plaintiff, the United States of America, opposes the motion. Docket 122. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On June 4, 2018, Thomsen pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 72; Docket 85. On August 27, 2018, the court sentenced Thomsen to 240 months in custody and 10 years of supervised release. Docket 104; Docket 105 at 2-3. Her sentence was later reduced to 120 months in custody followed by 5 years of supervised release. Docket 112 at 2-3. Her projected date of release is June 15, 2026. Docket 115 at 192.

Thomsen is incarcerated at Federal Correctional Institution (FCI) Pekin in Pekin, Illinois. Docket 122 at 1. As of December 16, 2020, there are currently 366 active COVID-19 cases among FCI Pekin's inmates and staff, 0 deaths from COVID-19, and 269 inmates and staff have recovered from COVID-19. *See*

*BOP: COVID-19 Update*, Fed. Bureau of Prisons,

https://www.bop.gov/coronavirus/ (last visited on Dec. 16, 2020).

Thomsen is 53 years old. Docket 115 at 119. Her chronic medical conditions include asthma, high cholesterol, hypothyroidism, obesity, neuropathy, history of stroke and seizures, and drug addiction. Docket 113 at 2; Docket 118 at 1. As of January 27, 2020, Thomsen weighed 229 pounds and is 71 inches tall. Docket 115 at 25, 139. Based on her weight and height, her body mass index (BMI) is 31.9. *See* Adult BMI Calculator, Ctrs. for Disease Control & Prevention,

https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_c alculator/bmi _calculator.html (last visited on Dec. 14, 2020).

On April 23, 2020, Thomsen completed an Inmate Request to Staff form. Docket 115 at 194. Thomsen requested that she be considered for compassionate release due to COVID-19. *Id.* On May 5, 2020, the warden denied her request. Docket 113-1. Thomsen filed a pro se motion with the court for relief under the First Step Act. Docket 113. Thomsen's counsel subsequently filed a supplement to her pro se motion. Docket 118.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in

the court where they were convicted seeking compassionate release. § 603. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the sentencing factors in 18 U.S.C. § 3553(a) and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" to warrant the reduction and that the defendant not pose a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(1)-(2) (U.S. Sentencing Comm. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Thomsen argues that the risks posed by the COVID-19 pandemic together with her adverse health conditions satisfies the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 113 at 1-2; Docket 118 at 7-11. Thomsen requests a sentence of time served and, if deemed necessary by the court, a period of home confinement as a condition of supervised release. Docket 118 at 13-15.

## I.   Administrative Exhaustion

Previously, only the BOP Director possessed the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate

3

release on motions filed by defendants "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).

Thomsen first submitted a request for compassionate release on April 23, 2020. The warden denied the request on May 5, 2020. Thus, the 30-day period expired, at the latest, on June 4, 2020. Given that the 30-day waiting period required by 18 U.S.C. § 3582(c)(1)(A) has lapsed, Thomsen's motion is ripe for review on the merits.

## II.    Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) provides that the sentencing court may grant compassionate release based on "extraordinary and compelling reasons[.]" Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion "the criteria to be applied and a list of specific examples." *Id.* Though adopted prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios. U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* Additionally, there is a fifth catch-all

4

category for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13 cmt. n.1(D).

After the FSA was passed, the Sentencing Commission did not update its policy statement because the Sentencing Commission has not had a quorum. *See United States v. Beck,* 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies. *See United States v. Rodd,* 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown,* 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020). It is clear Congress intended to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission. *See* 132 Stat. at 5239; 18 U.S.C. § 3582(c)(1)(A). But the Commission has not addressed whether the policy statement from the old regime is applicable to the new statute nor has it adopted a new policy statement.

Because the First Step Act changed the way a compassionate release motion may be brought by allowing such a motion directly from the defendant,

"several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon*, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Beck*, 425 F. Supp. 3d 573, 578-80 (M.D.N.C. 2019); *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."); *see also United States v. Frith*, 2020 WL 4229160, at *2 (D.N.D. July 23, 2020).

Assuming the policy statements continue to apply to compassionate release motions brought under the amended FSA, Thomsen has failed to show that her medical conditions rise to extraordinary and compelling circumstances justifying a reduction in her sentence.

Thomsen contends that her circumstances warrant relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, USSG § 1B1.13 comment note 1(D). Docket 118 at 4, 11-12. Thomsen argues that her health conditions—asthma, high cholesterol, hypothyroidism, being overweight, neuropathy, history of stroke and seizures, and a drug addiction—put her at high-risk of severe illness if she contracts COVID-19. Docket 113 at 2; Docket 118 at 7-11.

6

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) instructs that people with the following health conditions *are* at an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from organ transplant, obesity (a BMI of 30 or higher), smoking, heart conditions, sickle cell disease, and Type II diabetes. *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (Dec. 1, 2020). The CDC also identifies certain medical conditions that *may* put a person at an increased risk of severe illness from COVID-19, including moderate to severe asthma, hypertension or high blood pressure, liver disease, overweight, and several others. *Id.*

The court has reviewed the medical records submitted in this case. Thomsen's medical conditions include asthma, obesity, hypothyroidism, neuropathy, gastro-esophageal reflux, and hyperlipidemia. Docket 115 at 22, 133, 146. Of the conditions recognized by the CDC as putting people at an increased risk of severe illness from COVID-19, Thomsen suffers only from obesity. With a BMI of 31.9, Thomsen fits within the category of people who are obese (BMI of 30 or higher). But "the fact that [Thomsen] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of [her] sentence." *United States v. Williams*, 2020 WL 4756743, at *5 (E.D. Pa. Aug.

7

17, 2020); *see also United States v. McAbee*, No. 4:14-CR-40027-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons); *United States v. Saenz*, No. 3:10-CR-30027-RAL, 2020 WL 4347273, at *5 (D.S.D. July 29, 2020) (finding defendant with other medical conditions and a BMI between 40 and 44.9 did not establish extraordinary and compelling reasons). Though qualifying as obese, Thomsen's medical records reflect she has made efforts to adopt a healthier lifestyle by running daily, eating healthier, and losing weight. Docket 115 at 131, 133.

The court has also considered that Thomsen's asthma, if it were moderate to severe, is a medical condition that *may* increase her risk of severe illness from COVID-19. However, there is no indication in the records that such is the case. Her medical records indicate she is prescribed an Albuterol inhaler for her asthma, which she is to use as needed but not daily. Docket 115 at 129. During her time in custody, Thomsen's asthma symptoms have varied and sometimes she does not use her inhaler at all. *Id.* at 8, 24, 106, 132. Currently, Thomsen's asthma appears well-controlled and she is receiving proper care for this condition while in custody. The court is not convinced that asthma, even coupled with obesity, warrants a sentence reduction for extraordinary and compelling reasons. *See United States v. Muhlenhardt*, 2020 WL 4697112, at *4 (D. Minn. Aug. 13, 2020) ("[D]espite the risk [the defendant's] asthma can present, the Court agrees with the findings of several courts that the risk alone is insufficient to warrant release."); *United States v. Slone*, 2020 WL 3542196,

8

at *6 (E.D. Pa. June 30, 2020) ("[A]n incarcerated person arguing extraordinary and compelling reasons based on asthma which is not moderate to severe is not entitled to compassionate release.").

Thomsen's other medical conditions—hypothyroidism, neuropathy, gastro-esophageal reflux, and hyperlipidemia—are not recognized among those that increase or might increase the risk of severe illness from COVID-19. Moreover, these medical conditions are managed with medication. Docket 115 at 24, 129-130, 131, 151. Overall, Thomsen has not identified how her medical conditions prevent her from providing self-care in a correctional facility setting or how they amount to extraordinary and compelling circumstances justifying a reduction in sentence.

The court believes that Thomsen's medical conditions are appropriately managed at FCI Pekin, that the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, that it has adequately treated inmates who contracted COVID-19, and that it will continue to do so. Although the court in no way diminishes Thomsen's health concerns, her medical conditions, coupled with the present conditions at FCI Pekin, do not establish extraordinary and compelling reasons justifying her early release.

## III.    Sentencing Factors of § 3553(a)

Even assuming Thomsen's medical conditions are "extraordinary and compelling reasons" warranting a reduced sentence under 18 U.S.C. § 3582(c)(1)(A)(i), the sentencing factors in § 3553(a) do not weigh in favor of a reduction.

9

Thomsen pleaded guilty to conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Docket 72; Docket 85. Thomsen maintained an active role within the conspiracy. Docket 96 ¶¶ 14-18. When searching her residence, 275 grams of methamphetamine, digital scales, packaging materials, one Ruger SR .22-calliber handgun, and 90 rounds of ammunition were found.  *Id.* ¶ 20. Thomsen admitted to the officers that the drugs belonged to her and she was aware the firearm was at her residence. *Id.* ¶ 22. While on pretrial release, Thomsen was arrested due to her repeated participation in drug trafficking. *Id.* ¶¶ 31-32. Her home was searched again, and an additional 159.2 grams of methamphetamine were found. *Id.* ¶ 35. In total, approximately 9,857 grams of methamphetamine were attributed to the defendant as a result of the investigation. *Id.* ¶ 39. A Presentence Investigation Report prepared in advance of sentencing calculated Thomsen's offense level as 36 and placed her in criminal history category IV. *Id.* ¶¶ 54, 60. The resulting guideline range for her sentence was 262-327 months in custody. *Id.* ¶ 97. A mandatory minimum sentence of 240 months in custody was required. *Id.* ¶ 96.

At sentencing, the court imposed the mandatory minimum of 240 months in custody. Docket 105 at 2. Thereafter, Thomsen's sentence was reduced to 120 months. Docket 112. Thomsen's current sentence is already less than the offense's mandatory minimum of 240 months. Of that time, Thomsen has served 28.7% of her full term and 33.6% of her statutory term as of October 20, 2020. Docket 115 at 192.  Therefore, the court finds that

10

Thomsen's sentence of 120 months in custody with 5 years of supervised release continues to be appropriate for the seriousness of the crime to which she pleaded guilty.

## CONCLUSION

Thomsen has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 113) is denied.

Dated December 22, 2020.


BY THE COURT:


/s/ Karen E. Schreier
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE